𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

Cobbs, Assignee, v. Gilchrist's Adm'r and Als.

June 11th, 1885.

1. Appellate Court—*Dismissal of appeals.*—Order dismissing appeal or writ of error, effects same purpose as affirmance. Code 1873, chapter 178, section 18.

2. Bankruptcy—*Actions by or against assignee.*—U. S. Revised Statutes, section 5057, limiting actions by or against assignees to two years after accrual of rights, applies to all litigation between him and any adverse claimant.

3. Idem—*Case at bar.*—By decree H.'s lands were subject to certain liabilities. H. devised his lands to L. and to J. Between them partition was made. L. was adjudicated a bankrupt. C., her assignee, became party to the suit. In 1876, a decree apportioned the liabilities between the lands of L. and of J., and directed sale. Sale was made and proceeds collected. Then, a personal fund amenable to same liabilities, turned up, and was applied, causing a surplus. J. and one S. had a contest for said surplus, which in 1882 was adjudged to J. During this contest, C. was neutral, but more than two years after the accrual of his right of action, he, as L.'s assignee, claimed said surplus as part of L.'s assets, because L.'s lands had contributed more than their proportion to satisfy said liabilities. Court below, in 1883, decreed against C. On appeal,

Held :

1. Decree of 1883 could not be reversed without disturbing decree of 1876, affirmed by dismissal of appeal.

2. Suit by assignee for said surplus was barred by lapse of two years before suit brought.

Heard at Richmond, but decided at Wytheville.

Appeal from decree of corporation court of Danville, rendered at its May term, 1883, in the cause of Gilchrist's administrator *against* · Howard Craft's administrator and als., dismissing the petition or bill of Cobbs, assignee of Lydia Craft, bankrupt, claiming a certain surplus as part of the bankrupt's estate.

Opinion states the facts.

*E. E. Bouldin*, for appellant.

*Peatross & Harris*, and *Green & Miller*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a controversy as to who is entitled to a certain fund remaining in the hands of the receiver in the suit of Cole, adm'r of Gilchrist, against one Young and Howard Craft's adm'r, brought many years ago in the circuit court of Pittsylvania county, and there prosecuted until removed to the corporation court of Danville. The object of that suit was to avoid, for fraud, a contract and conveyance by Gilchrist to Young, of certain very valuable real estate in Pittsylvania county, Virginia, and in the state of Kentucky, which conveyance was fraudulently procured by a corrupt combination between said Young and Craft, the product of which fraudulent conspiracy was divided between them. The suit was successfully prosecuted, the swindle exposed, and the contract annulled by a decree entered in the cause, which decree was appealed from and was affirmed by this court in 1873. The cause was then sent back to the lower court for further proceedings to be had therein. Much of the land acquired from Gilchrist by Young and Howard Craft, by and through their fraudulent combination aforesaid, had passed into the hands of innocent parties, and could not be made available to reimburse the estate of Gil-

christ, so it became necessary to look for reimbursement to the estates of Young and Howard Craft.

Howard Craft died seized in fee of a large estate, real and personal, which he devised jointly and equally to his wife, Lucy D. Craft, and to his son and only child, Johnson Craft. Subsequently, in a suit for the purpose, partition of said estate was had in obedience to a decree rendered in said last named suit in 1858. After said partition had been made and confirmed, Lucy D. Craft went into bankruptcy and surrendered the land partitioned to her, except a small portion which she had aliened. Upon proceedings taken therein for the purpose, the lands surrendered by Lucy D. Craft were, by order of the bankrupt court, stricken from her schedule of property surrendered, and submitted to the jurisdiction and disposition of the state court, in said suit of Cole, adm'r of Gilchrist, *vs.* Young and Howard Craft's representative, &c. After said suit went back to the circuit court of Pittsylvania, with the view of reaching and charging the estates of Young and Howard Craft with the liability incurred by them by reason of the fraud which they had perpetrated upon Gilchrist, the bill was amended, the necessary facts set forth, and all necessary parties made; and the appellant Cobbs, assignee of Lucy D. Craft, was made a party to said amended bill. This was in 1875. In the meantime, the cause was removed to the corporation court of Danville, wherein all subsequent proceedings were had. For the purposes of this controversy, no further mention need be made of Young or his estate, as the fund in question is part of the proceeds of the Craft lands sold in said suit.

In the suit of Gilchrist's adm'r *vs.* Young and Howard Craft's estates, such proceedings were had that by a decree rendered in February, 1876, a very large liability was fixed upon the estates of Young and Howard Craft. That decree ascertained and apportioned the liability of the devisees of Howard Craft; held that all the lands devised by said Howard Craft to Lucy D. and Johnson Craft, were liable to Gilchrist's

estate, except certain parcels designated which had been aliened; decreed that all the lands so liable would be necessary to discharge said liability, and directed a sale of the whole, so liable, except a tract of 290 acres derived by Johnson Craft under the will of Howard Craft, and by Johnson Craft sold and conveyed to Joab Watson, as to which the court, being in doubt then as to the liability thereof, reserved its opinion. This decree of 1876, also expressly ascertained and fixed the order of liability of said Craft lands,—the lands of Lucy D. Craft (except two small parcels thereof which she had conveyed), and a certain tract of 211 acres derived by Johnson Craft under the will of Howard Craft, being declared to be *first liable;* the other lands of Johnson Craft, subjected by said decree, are expressly put in the class *second liable.*

The decree of 1876, thus apportioning and fixing the order of liability of the Craft lands, was appealed from, and the appeal regularly docketed in this court, which appeal was dismissed on the 6th day of November, 1878.

All the lands thus decreed to be sold were sold, and the purchase money came into the hands of the court's receivers.

In 1877, unexpectedly, a very considerable personal fund, belonging to Howard Craft's estate, was realized, and hence the balance, arising from the sale of the Craft lands, now in dispute.

When it was ascertained that this surplus existed, John O. Shelton, the purchaser from Johnson Craft of a tract of land (a part of that devised by Howard Craft), which had been subjected and sold under said decree of 1876, filed his petition in said suit claiming, that as said fund was needed to satisfy the liability of Howard Craft's estate, he (Shelton) was entitled thereto.

This petition was answered by Johnson Craft, denying Shelton's claim, and insisting that he (Craft), and his creditor, one Hargrove, were entitled to same. The question was determined at the June term, 1882, when the court rejected the claim of Shelton (and also that of others, who it seems also asserted

claims thereto), and decreed that Johnson Craft and his creditor, Hargrove, were entitled to said surplus. Cobbs, assignee of Lucy D. Craft, though a party, during this contest stood by without asserting any claim. After the decree of June, 1882, however, Cobbs, to-wit, at the September term, 1882, presented his petition to said corporation court, asking for the reversal of the said decree of June term, 1882, in so far as it directed said fund to be paid to Johnson Craft or his creditor, Hargrove, and that the same be decreed to him as assignee of Lucy D. Craft, on the ground that the lands of Lucy D. Craft had paid more than her share of the liability upon the estate of Howard Craft. The court, being of opinion that the questions suggested should be raised by bill, rejected the petition, but with leave to said assignee to file his original bill. Accordingly, Cobbs, assignee, filed his bill, setting forth more particularly his said claim. Johnson Craft answered, denying any right of the plaintiff, Cobbs, assignee as aforesaid, and relied upon the statutes of limitation, state and federal. And Messrs. Peatross and Harris, and Geo. T. Rison, filed their petitions in this last suit, claiming that they, as attorneys, had liens upon the fund claimed by the plaintiff, Cobbs, as assignee, for services rendered by them for Johnson Craft, in the controversy between him and others in respect thereto. At the December term, 1882, of said corporation court, a commissioner was ordered to report the facts and circumstances connected with the contract and alleged lien of said attorneys. The commissioner reported adversely to said claim. This report was excepted to; and at the May term, 1883, of said court, the two causes came on and were heard together, when the court sustained the exceptions to said report, and dismissed the bill of Cobbs, assignee. The case is here on appeal from the decree rendered at the June term, 1882, and the decree rendered at the September term, 1882, in the suit of *Cole, adm'r of Gilchrist* v. *Young and Howard Craft's adm'r*, and from the decree rendered at the May term, 1883, in the suit of *Cobbs, assignee*, v. *Johnson Craft & others.*

The court is of opinion that there is no error in the decrees appealed from, or either of them. The real question is a narrow one, and depends upon the effect of the decree of February, 1876, in the suit of *Gilchrist's adm'r* v. *Young and Howard Craft's adm'r*, which decree was appealed from, and the appeal dismissed after the same had been regularly docketed in this court. By section 18, chapter 178, Code 1873, it is provided that "after the dismission of an appeal, writ of error or *supersedeas*, no other appeal, writ of error or *supersedeas* shall be allowed to or from the same judgment, decree or order." There is much contention whether that (the decree of 1876) was or not a final decree. For the purposes of this case it is not necessary to decide that question. It is enough to say that, under the circumstances, it has all the effect of a final decree. It apportioned the liabilities of Howard Craft's devisees. It made all the lands of Lucy D. Craft, with only one of the tracts held by Johnson Craft *first liable;* all the other lands of Johnson Craft are in the classes held *second* and *third* liable. This being so, and that decree, settling this vital principle, having been appealed from and the appeal regularly dismissed, and no longer subject to be appealed, it is in effect final, and forever concludes all parties as to the principles thereby settled. It has been seen that the appellant from the start has rested his claim upon his right to contribution from this fund upon the ground that the lands of Lucy D. Craft paid more than her share of the liability upon Howard Craft's estate. That her lands paid more of the liability than the lands of Johnson Craft did, is doubtless true; but that is the result of the decree which made her lands first liable, and thereby cut off all claim on the part of her assignee to contribution. The right to contribution arises, ordinarily, when two or more persons jointly owe a debt, and one is compelled to pay the whole of it, the others are bound to indemnify him for the payment of their shares; this indemnity is called a contribution. 2 Bour. Ins. 79; 1 Bour. L. D. 359, and authorities cited; Adams' Eq. 267 (side). From these au-

thorities it is plain, that in numerous cases courts of equity will compel contribution if the relations of the parties are such that justice requires it at the hands of the court. On the other hand, in the absence of such relations, the right does not exist and cannot be enforced. No such relation existed between these parties. True, Howard Craft devised his lands to them jointly and equally, but partition had been made between them; and they held in severalty, when by the decree of 1876, the lands thus held were changed, and the order of liability fixed. This court has no authority now to enquire into the propriety of that decree; it was appealed from and the appeal was regularly dismissed; and that dismissal precludes all inquiry by this or any other court, into that and all previous decrees in the cause. This view seems to be thoroughly sustained by the reasoning of the judge delivering the opinion of this court in *J. B. Campbell's ex'ors* v. *A. C. Campbell's ex'or*, 22 Gratt. 649. Moncure, P., delivering the opinion in that case, at page 672, said: "The case made for the court of appeals by an appeal from a decree of the court below, whether final or interlocutory, is, as to the court of appeals, a complete case in itself, and the decree of that court therein is final and conclusive between the parties, as well upon the court itself as upon the court below; and the court of appeals can do nothing more in the course of the same litigation, until a new and different appeal is brought up to it from some decree of the court below, rendered in the cause upon subsequent proceedings in that court; and then the court of appeals can only review and reverse that decree without interfering with its own former decree."

Here, it is true, only decrees subsequent to that of 1876, are appealed from; but to reverse the decrees complained of would be, in effect, to review and reverse said decree of 1876, which fixed the order of liability of the lands of Lucy D. and Johnson Craft, and thereby precluded the appellant's claim as assignee of Lucy D. Craft. By force of the statute, (§ 18, ch.

178, Code 1873,) the order of this court, dismissing the appeal from the decree of 1876, has, for all practical purposes, precisely the same effect as that of a decree of affirmance.   Otherwise, the statute is of no effect whatever.

Again, the appellant, as assignee of Lucy D. Craft, at the inception of this proceeding by him, stood precluded and was barred of his claim by the federal statute prescribing the time within which, after the right of action has accrued, proceedings by or against assignees in bankruptcy shall be commenced. The policy of the bankrupt law is speedy as well as equal distribution of the bankrupt's assets among his creditors.   Hence the clause (§ 5057, R. S. U. S.), limiting the commencement of actions by and against the assignee to two years after the right of action accrues, applies to all judicial contests between the assignee and any person whose interest is adverse to his.   Such was the ruling of the Supreme Court of the United States in *Bailey* v. *Glover*, 21 Wall. 346; see also *Gifford* v. *Helms*, 98 U. S. 248; *Jenkins* v. *International Bank*, 106 U. S. 571.

Here the surplus in controversy was ascertained, by decree in August, 1877; a protracted controversy in respect to it then ensued, and was not determined until June, 1882, during all which period this assignee, the appellant here, though a party to the suit in which this controversy, between others, was being waged, stood by and asserted no claim.   This was gross negligence, if he had any claim (and in fact he had none), and, to say the least, strongly indicated that he had no claim, or had abandoned it. That it was his duty to commence proceedings to recover this fund, if he had any just claim thereto, within two years after the decree of 1877, there can be no doubt; and that the right of action, if any, then accrued, is equally clear.   He, however, waited for over five years, and until the contest between others, claiming the fund adversely to him was ended, and then presented his petition, asking that the court reverse and annul its decree settling the question, and decree the fund to him.   His

petition was rightly rejected; and it would have been clearly right had the court refused to entertain his original bill, for same reason, when subsequently presented. In any event, the court rightly dismissed his bill at the hearing. Under all the circumstances, the decrees appealed from, and each of them, are plainly right, and must be affirmed, with costs to the appellees.

DECREES AFFIRMED.